JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY JAMES WHITE,<br><br>        Petitioner,<br><br>   v.<br><br>W.L. MONTGOMERY, WARDEN,<br><br>        Respondent. | Case No. 2-15-cv-06669-DDP<br>   (CR 00-00258 DDP)<br><br>**ORDER DENYING PETITION** |

     Presently before the court is Cory James White ("Petitioner")'s Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to a plea agreement, White pleaded guilty to aiding and abetting a bank robbery on February 28, 2000—as charged in Count One of the indictment in *United States v. Anton Jamal Collins and Corey James White*, No. CR 00-258-DDP-2 (hereinafter "*White I*")—and to committing a bank robbery on February 23, 2000—as charged in the single-count indictment in *United States v. Cory James White*, No. CR 00-752-DDP-1 (hereinafter "*White II*"). This Court sentenced White to 94 months' imprisonment on both counts, to be served concurrently and to be followed by a period of supervised release. White completed his sentence and term of supervised

release on approximately February 1, 2010. Some sixteen months later, White committed another bank robbery, which was prosecuted in the Superior Court of the State of California, County of Orange. A jury convicted White of armed bank robbery and the Superior Court sentenced petitioner to a term of imprisonment of forty years to life. This sentence was based in part on the Superior Court's determination that Petitioner's guilty pleas in *White I* and *White II* constituted two prior "strikes" under California's Three Strike Law, *see* Cal. Penal Code § 667.

White now petitions this Court for relief from his guilty plea in *White I* on the ground that he was misinformed by his defense counsel that his plea would only constitute one strike. White claims that had he understood his guilty plea would count as two separate strikes, he would not have pleaded guilty. Having considered the parties' submissions, the court DENIES the Petition and adopts the following Order.

**I. BACKGROUND**

On March 14, 2000, Petitioner was charged in a two-count indictment with aiding and abetting co-defendant Anton Jamal Collins in the commission of two bank robberies on February 28, 2000. *See White I*. On June 30, 2000, Petitioner was charged in a separate case with a single-count indictment for committing a third bank robbery five days earlier on February 23, 2000. On November 14, 2000, Petitioner pleaded guilty before this Court to Count One of the indictment in *White I* and the single-count indictment in *White II*. (*White I*, Dkt. 47.)

As part of the plea agreement, Petitioner admitted to the following facts. On February 23, 2000 (the first robbery), Petitioner admitted to robbing Vineyard National Bank in Rancho Cucamonga, California along with a partner. (*Id.*, Dkt. 45 (Plea Agreement) at ¶ 6.) According to the plea, Petitioner wielded a gun and stood near the door while his partner went to the teller window. (*Id.*) During the course of the robbery, Petitioner admitted to throwing a male customer to the ground while brandishing his gun and to running away from the bank with his partner. On February 28, 2010 (the second robbery), Petitioner admitted to serving as a getaway driver for co-defendant

Collins while Collins robbed a Vineyard National Bank in Diamond Bar, California. (*Id.*) Pursuant to the plea agreement, the government dismissed the second count of the indictment in *White I*, which asserted that Petitioner served as a getaway drive for another robbery—this one at a Bank of America in Upland, California—on February 28, 2000 (the third bank robbery). (*Id.* ¶ 13(b)l Presentence Report (Dec. 18, 2000), ¶¶ 17-22.) Assuming the court calculated a certain criminal history category, the government also agreed to recommend a low-end sentence. (Plea Agreement ¶ 13(d).)

On April 18, 2001, this Court sentenced Petitioner to ninety-four months' imprisonment on each count of the conviction, to be served concurrently, followed by a total of five years of supervised release. (*White I*, Dkts. 66, 67.) The sentence was adjusted after Petitioner violated the terms of his supervised release and Petitioner was ultimately released from custody on February 1, 2010.

On June 24, 2011, Petitioner committed another armed bank robbery. (Gov't Opp'n, Ex. 1.) Defendant was convicted by a jury in the Superior Court of the State of California of second degree robbery for robbing a Banco Popular in La Habra, California at gunpoint. *See People v. Cory James White*, No. 11NF3599 (Cal. Super. Ct. 2013) (hereinafter "*White III*"); (Gov't Opp'n, Exs. 2, 3.) When calculating Petitioner's sentence, the Superior Court found that Petitioner's convictions in *White I* and *White II* constituted two prior "strikes" under California's Three Strikes Law. (Gov't Opp'n, Ex. 3 at 68-69.) Based on these strikes, and other enhancements, the court sentenced Petitioner to a term of imprisonment of forty years to life. (*Id.* at 69.)

Petitioner appealed his sentence to the California Court of Appeals, arguing, *inter alia*, the Superior court erred in finding that Petitioner had two prior strikes. *See People v. White*, No. G048783, 2014 WL 4638970, at *1 (Cal. Ct. App. Sept. 17, 2014). On September 17, 2014, the California Court of Appeals denied Petitioner's appeal and concluded that the Superior Court had not abused its discretion in considering Petitioner's *White I* and *White II* convictions as two separate strikes. *Id.* at *2.)

On September 1, 2015, Petitioner filed the instant Section 2254 petition, alleging that his appointed counsel in *White I* and *White II* had advised him to agree to the plea deal and told him that the offenses to which he was pleading guilty would only constitute one "strike" for purposed of California's Three Strikes Law. (Pet. 3, 5.) Petitioner claims that, had he known that the guilty plea would constitute two strikes, he would not have agreed to the deal. Thus, Petitioner argues this his counsel's purported advice constituted ineffective assistance of counsel, in violation of his Sixth and Fourteenth Amendment rights. (*Id.* at 5.)

**II. DISCUSSION**

    **A. Construing Petitioner's Section 2254 Writ as a Writ of Coram Nobis**

Petitioner filed this action pursuant to 28 U.S.C. § 2254. Ordinarily, section 2254 governs habeas petitions brought by state prisoners. *See White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) overruled on other grounds by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (holding that section 2254 governs actions "as long as the person is in custody pursuant to the judgment of a state court") (internal quotations and citations omitted). Section 2254, however, is inapplicable to Petitioner's particular claim because he is not challenging his state court conviction. Instead, Petitioner argues that he received ineffective assistance of counsel during the federal criminal proceedings in *White I* and *White II.* While a habeas petition pursuant to section 2255 is the ordinary means of challenging a federal conviction, that provision is also inapplicable to the instant claim because Petitioner is no longer in federal custody. *See* 28 U.S.C. § 2255(a). As the government suggests, the only possible vehicle for a petitioner such as White to challenge the collateral consequence of a prior federal conviction on a subsequent state court sentence is a writ of error coram nobis.

    "The writ of error coram nobis affords a remedy to attack an unconstitutional or unlawful conviction in cases when the petitioner already has fully served a sentence." *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) (citing *United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989)). As the Ninth Circuit explained in *Telink*:

4

> The petition [for coram nobis] fills a very precise gap in federal criminal procedure. A convicted defendant in federal custody may petition to have a sentence or conviction vacated, set aside or corrected under the federal habeas corpus statute, 28 U.S.C. § 2255. However, if the sentence has been served, there is no statutory basis to remedy the "lingering collateral consequences" of the unlawful conviction. *Yasui v. United States*, 772 F.2d 1496, 1498 (9th Cir. 1985). Recognizing this statutory gap, the Supreme Court has held that the common law petition for writ of error coram nobis is available in such situations . . . . *United States v. Morgan*, 346 U.S. 502, 505 n. 4 (1954). District courts are authorized to issue the writ pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (1994). *Morgan*, 346 U.S. at 506.

*Id.* at 45 (some citations omitted). To the extent that White's ineffective assistance of counsel claim is meritorious, it is the type of error that a writ of coram nobis might remedy. In the immigration context, for example, the Ninth Circuit has recognized on multiple occasions that "affirmative misrepresentations by defense counsel regarding immigration consequences" constitutes deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984), and that an ineffective assistance of counsel claim can be raised by writ of coram nobis. *See, e.g.*, *United States v. Chan*, 792 F.3d 1151, 1154 (9th Cir. 2015). Along these lines, White contends that an affirmative misrepresentation by his defense counsel regarding consequences under California's Three Strikes Law constituted deficient performance. The court concludes that this claim may be tested by coram nobis.

To qualify for coram nobis relief, a petitioner must show: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987). For purposes of the instant petition, the government does not contest that White has met the first three factors. (Opp'n 9.) The government also does not contest the premise that ineffective assistance of counsel can constitute an "error of the most fundamental character." (*Id.*)

Instead, the government challenges whether Petitioner can make out an ineffective assistance of counsel claim in this particular case.

**B. Ineffective Assistance of Counsel Claim**

Under the Sixth Amendment, all criminal defendants enjoy the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686-700 (1984). In *Strickland*, the Supreme Court held that in order to show ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient and fell below an objective standard of reasonableness and (2) the defendant was prejudiced as a result and deprived of a fair trial. *Id*. at 687. The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). When a petitioner alleges ineffective assistance of counsel, an evidentiary hearing is necessary only if, assuming the petitioner's factual allegations as true, the ineffective assistance of counsel claim could prevail. *U.S. v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994).

White contends that he received ineffective assistance of counsel during the federal criminal proceedings in *White I* and *White II*. Specifically, White claims that his counsel advised him to accept a plea deal and erroneously told him that he was "pleading to one strikable offense." (Pet. 5.) Had he known his guilty plea would constitute two strikes, White contends that he would not have accepted the plea deal and instead gone to trial. (*Id.*) In addition to his own assertion that his counsel misinformed him about the consequences of the plea deal, White submits the affidavit of his codefendant in *White I*, Anton Jamal Collins. (Pet. 11.) Collins states that he "was surprised that [] White took a deal for aiding and abetting, because [he] was willing to take the stand for [White]." (*Id.*) Collins also claims that he believes White took the deal because his lawyer told him it "wouldn't effect (sic) him in the future, that it was only one strike in federal jurisdiction." (*Id.*) White does not expressly state whether he would have rejected the entire plea deal or whether he would have pleaded guilty to the charges in *White II*—where he admitted to entering a bank and brandishing a gun during a robbery—and gone to trial on *White I*—where he only admitted to driving the getaway

6

car. However, White's Petition lists the case number for *White I* as the conviction he is contesting. Furthermore, his only supporting affidavit is from his co-defendant in *White I*. (Pet. 11.) Accordingly, the government assumes, and White does not dispute, that White is only claiming that he would have gone to trial in *White I* had he been properly informed of the consequences of his plea.

The court finds that White's claim does not meet either prong of *Strickland*. Beginning with the deficient performance prong, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. This is particularly the case "when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S. 115, 125 (2011) (noting "the potential for the distortions and imbalance that can inhere in a hindsight perspective" and explaining that "habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel"). Although an affirmative misstatement regarding the consequences of a plea deal may constitute ineffective assistance of counsel, there is insufficient evidence of any affirmative misstatements by White's defense counsel much less evidence that any alleged misstatements rose to the level of deficient performance. As an initial matter, White's defense counsel has stated that he has no recollection of the conversations in question because they took place approximately fifteen years ago. (Gov't Opp'n 12.) Thus, the only evidence of any misstatement is White's own assertion and the hearsay support from White's co-defendant. White provides no other evidence that these statements were made, that he asked about the consequences of a plea deal under the Three Strikes Law, say in written communications to his counsel, or that he was concerned about this issue at his plea colloquy. Likewise, there is no indication that the government knew White was concerned about the collateral effects of his plea or that he ever sought any concessions from the government about the number of strikes his plea would constitute.

7

Even assuming White's counsel made misstatements about the consequences of entering a plea deal, White's petition alleges no specifics about the particular misstatements made by counsel. Under *Strickland*, a petitioner bears the burden of proving that his attorney's performance fell below an objective standard of reasonableness. Without any specific allegations about what precisely White's counsel told him about the plea deal, the court cannot find that White has met this burden. For example, White's counsel may have explained to him that not every conviction necessarily counts as a strike in subsequent proceedings under California law and that a judge might look more favorably on a request to discount a strike if White agreed to a plea deal. *See People v. Superior Court* (*Romero*), 13 Cal. 4th 497, 531 (1996) (noting sentencing court's discretion to dismiss a strike allegation).[1] Such a statement would not be objectively unreasonable, even where a more definitive statement that a guilty plea necessarily would not count might constitute deficient performance. In the absence of more specific allegations, White cannot meet the first prong of *Strickland*.

White also cannot meet the second prong of *Strickland*. Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Where ineffective assistance leads a petitioner to accept a plea bargain, a different result means that 'but for the counsel's errors, [petitioner] would either have gone to trial or received a better plea bargain.'" *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) (citation omitted). As the government notes, it seems unlikely that defense counsel's alleged misstatement played as significant a role in White's initial decision to plead guilty as he now contends. White has not established a reasonable probability that, had he properly understood the possible of collateral effects of his plea deal, he would have rejected the deal or secured a better bargain. First, it seems unlikely White would have rejected the plea deal given the evidence of his guilt. Notwithstanding his co-defendant's suggestion

---

[1] Indeed, White availed himself of a *Romero* hearing when he challenged his sentence in *White III*.

8

that White was an accidental getaway driver in *White* I—an actual innocence claim that should have been, but was not, presented in a direct appeal of the conviction—both co-defendants were caught with "bait bills" from the Vineyard bank robbery at issue in *White I*. Moreover, there is no dispute that White was a full participant in the bank robbery in *White* II. Thus, White would be left arguing to a jury that he robbed a bank on February 23, 2000—a case where he pleaded guilty—but was an unwitting getaway driver for two additional robberies five days later. Moreover, White received substantial benefits from agreeing to a plea deal. In particular, he was allowed to plead guilty to only two of the three robberies he was indicted for committing and the government agreed to recommend a low-end sentence under a guidelines range of 84-105 months. It seems unlikely that White would have traded these benefits and taken his chances at trial solely because his plea might constitute two rather than one strike under California law—a consequence that would only be relevant if White committed another crime. Under these particular circumstances, the court finds that White has not carried his burden under the second prong of *Strickland*.

**IV. CONCLUSION**

For the reasons stated above, the court DENIES the Petition and DISMISSES the case.

**IT IS SO ORDERED.**

Dated: June 12, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE